Plaintiff, Rudolph A. Bergeron, seeks judgment against Charles Mumphrey, a real estate broker licensed in accordance with the provisions of Act No. 236 of 1920, alleging that while he was engaged as a salesman by the said Mumphrey he performed services in connection with the listing for sale of a certain piece of real estate; that subsequently the said real estate was sold as a result of the listing; that *Page 412 
under his agreement with Mumphrey, he was entitled to one-third of the total commission; that the total commission earned and collected by Mumphrey was $580.00, and that the said Mumphrey has refused to pay over to him the amount due him, to-wit $193.33.
Mumphrey denies all of the allegations of plaintiff's petition, except that he admits that the said property was sold through his office and that he received a commission of $580.00. There was judgment in the First City Court of New Orleans for plaintiff for $193.33, as prayed for, and defendant has appealed suspensively.
Bergeron obtained from the Louisiana Real Estate Board in accordance with the provisions of Act No. 236 of 1920, as amended, a license which authorized him to engage as a real estate salesman in the employ of G. Mike Smith who was a duly licensed real estate broker in accordance with the provisions of the said statute.
On April 10th, 1947, he terminated this employment and procured his license from Smith so that he might have it cancelled and have a new one issued authorizing him to carry on his occupation as a real estate salesman but in the employ of Mumphrey.
On April 7th, 1947, which, it will be noted, was three days before he terminated his employment with Smith, Bergeron called at the office of Mumphrey and told him and another employee, Trapani, that he thought that a Mrs. Hickox would list her real estate with Mumphrey for sale if they would call upon her. On that same day, April 7th, 1947, Mumphrey and Trapani, accompanied by Bergeron, called on Mrs. Hickox and obtained from her a listing of her property. On the listing contract which was obtained from Mrs. Hickox, Bergeron's name was entered as the listing salesman. Three days later, on April 10th, 1947, as we have set forth, Bergeron, having obtained from Smith the license which had been issued to him as a salesman for Smith, took this license to his new employer, Mumphrey and requested Mumphrey to have the Louisiana Real Estate Board cancel it and issue a new one to Bergeron as a salesman for Mumphrey, all as required by Act 236 of 1920, as amended.
On May 3rd, 1947, the said Board had not advised Bergeron whether or not the necessary new license had been issued or would be issued, so on that day, May 3rd, 1947, Mumphrey wrote the Board requesting that it advise what action had been or would be taken. Under date of May 5th, 1947, Mumphrey was advised that the necessary license would be issued and that in the meantime Bergeron might engage as a salesman in the employ of Mumphrey. However, sometime before receipt of that communication, Bergeron had decided to engage in another business and did not, in fact, perform any further services as a salesman for Mumphrey, although he says that for a time he offered to do part-time work.
On May 28th, 1947, Mumphrey, or someone in his office — not Bergeron — obtained a purchaser for the property and the act of sale was passed in July, 1947. The commission, amounting to $580.00, was paid to Mumphrey.
The answer, as we have said, is in effect a general denial, but the principal defense relied upon is the alleged illegality of any transaction by Bergeron as a salesman for Mumphrey prior to May 10th, 1947, on which day he first entered the employ of Mumphrey.
Section 15 of the statute provides that:
"* * * it shall be unlawful for any real estate salesman to accept a commission or valuable consideration for the performance of any of the acts herein specified from any person, except his employer who must be a licensed real estate broker."
It is pointed out on behalf of defendant that at the time at which the listing was made with Mumphrey, Bergeron was a licensed salesman in the employ of Smith, and, therefore, contends defendant, it was unlawful under the above quoted provision of the statute for Bergeron to obtain a commission for securing a listing for any other real estate broker than Smith.
Plaintiff does not assert that he was in any way instrumental in procuring the purchaser and, therefore, he does not base this *Page 413 
claim nor any part of it on such an assertion, the only allegation being that, since he secured the listing, he is entitled to that part of the commission which would ordinarily go to the listing salesman.
The statute makes it very clear that it was the purpose of the legislators to absolutely prevent anyone from in any way engaging in the real estate business, either as a broker or as a salesman, as a whole or partial vocation without first obtaining the necessary license and without complying with the other provisions of the said statute. It is provided that the license obtained by a salesman must designate the broker by whom he is employed and that this license must be prominently displayed in the office of the broker. It is further provided that when a salesman desires to leave the employ of the broker the license must be returned to the Board and a new license obtained showing that he has become a salesman in the employ of the new broker.
It seems clear to us that it was the purpose of the framers of the act to give to the issuing board the right to investigate and to determine why the former license had been terminated before issuing the new one, and that it was contemplated that in the interim the salesman should not engage in business. We say this because section 17 provides that the Board shall investigate "the actions of any * * * salesman * * *, and shall have the power to suspend or revoke any license * * *," for various causes set forth in that section of the statute, and for the further reason that the Board requires when a salesman applies for a license either originally or when he changes employment, that he must set forth the time during which he has been employed, give the name of his last employer, and all information concerning his last employment. These requirements were obviously inserted for the purpose of giving the Board the opportunity to inquire thoroughly into all matters concerning the salesman before issuing the new license.
At any rate, it is clear that when the listing was obtained on April 7th, Bergeron was a licensed salesman for Smith and that it was, therefore, unlawful for him on that day to obtain a listing for Mumphrey, or to secure a commission for obtaining that listing.
The effect of this statute has been discussed and passed upon in many cases and it has always been held that where the person claiming the commission has been engaged in the real estate business as a "whole or partial vocation" he is not permitted to recover a commission unless he has complied strictly with the requirements of the statute.
In Garvey v. Lagattuta, 15 La. App. 414, 132 So. 267, we held that when a salesman desires to leave the employ of a broker, it is his duty to see that his license is returned to the Real Estate Board and that until he does so and obtains a new license, it is unlawful for him to perform any service except as an employee of the broker by whom he was originally employed.
In Trentman Co. v. Brown, 176 La. 854, 147 So. 14, 15, the Supreme Court held:
"* * * that any one who has not been licensed in accordance with its (Act No. 236 of 1920) provisions shall not be allowed to recover for any fee, claim, or charge for brokerage in the courts of the state."
In that case it was pointed out that, although the plaintiff had not been legally authorized at the time the agreement was entered into, he was later duly authorized and it was argued that, therefore, he had a right to sue for the commission. As the Supreme Court said, it was contended "that the unlawfulness of the transaction at the time it was entered into is, in effect, wiped out by a subsequent compliance with the provisions of the act."
In answer to that contention the Court held that:
"* * * no person coming within the provisions of the act shall be allowed to recover without alleging and proving that he was qualified under the act at the time his alleged cause of action arose, * * *."
We think it unnecessary to cite other cases, as in each of them, with three exceptions to which we shall refer, it was held that no recovery could be had. The three cases to which we have alluded are: Bosetta *Page 414 
v. Jacobs, 1 La. App. 277; Nebel v. Wise Miller, 6 La. App. 773; and Sheppard v. Hulseberg, 171 La. 659, 131 So. 840.
In the Bosetta case we found a claim by someone not at all engaged in the real estate business, based on the allegation that he had given to a real estate broker "a real live prospect" who desired to purchase certain property and that the broker had told him that if such sale could be made he would pay to the plaintiff a commission. We held that Bosetta, the plaintiff, was not engaged in the real estate business as a whole or partial vocation and that the act, therefore, did not apply to him.
In Nebel v. Wise Miller, supra, the plaintiff had been engaged as a salesman and had legally qualified. During his employment he obtained a listing and later terminated his employment. The property was sold after he had terminated his employment and he brought suit, contending that his contract of employment had provided that if he obtain a listing he would receive a certain portion of the commission regardless of when or by whom the sale might be effected. We held that the termination of his employment did not deprive him of his right to demand that part of the commission to which he was entitled as a result of having obtained the listing.
In Sheppard v. Hulseberg, supra, the Supreme Court, referring to the plaintiff, said:
"He was, in no sense, engaged in the calling of a real estate broker, and was not licensed as such."
He undertook to secure a purchaser for the property of defendant and having done so brought suit for a commission. The Court held that he was entitled to the commission since he was not in any sense engaged in the real estate business as a whole or partial vocation.
Counsel agreed that in his reasons for judgment, which were oral, the trial judge stated that there was a moral obligation to make payment, and he based judgment for plaintiff on this moral obligation.
However, counsel for defendant cite various articles of our Civil Code — 1891, 1892, 1893 and 1895 — which provide that in order that there may be an enforceable moral obligation, the object of the contract or agreement must be one which is not illegal.
A reading of the statute which is here involved shows, without any possible doubt, that the object which plaintiff seeks to accomplish is specifically made illegal. Referring to this very act, the Supreme Court, in Trentman Co. v. Brown, supra, quoted with approval, from a California decision, Wise v. Radis, 74 Cal.App. 765, 242 P. 90, 94, reading as follows:
"No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction."
In Moore v. Burdine, 174 So. 279, 282, in which there was involved an interpretation of this statute, we said:
"* * * Our courts cannot enforce contracts contrary to the public policy of this state."
In the statute is found a specific provision prohibiting the courts of this state from permitting recovery in such a situation.
Note section 19 which reads as follows:
"* * * That any person, firm, co-partnership, association or corporation, who has not been licensed in accordance with the provisions of this Act, shall not be allowed to recover for any fee, claim or charge for brokerage in the courts of this State."
We reach the conclusion that since, at the time the property was listed with Mumphrey, plaintiff was a duly licensed salesman in the employ of Smith, whatever agreement he may have had with Mumphrey cannot be enforced, and he cannot be permitted to obtain any commission as a result of that listing.
The judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is dismissed, at his cost.
Reversed. *Page 415