(No. 31631.— )

JOHN GRODY, doing business as Modern Furnace Company, Appellant, *vs.* MARY SCALONE, Appellee.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

JOSEPH I. BULGER, and ODE L. RANKIN, both of Chicago, for appellant.

EUGENE LIEBERMAN, of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff, John Grody, doing ·business ás Modern Furnace Company, brought suit in the circuit court of Cook County against Mary Scalone to recover a balance of $840, which it is alleged was due for the installation of a furnace in defendant's residence on contract for the agreed sum of $1220. A payment of $380 has been credited on the account. The contract upon which this suit was based recited that the "Modern Furnace Company," as seller, will install a certain oil furnace, and same is signed by Mary Scalone as buyer, and Modern Furnace Company by John Grody as seller. The defendant filed an answer admitting the contract in substance and the payment of $380, but denied any balance due and alleged plaintiff did not carry out the contract. Defendant also filed a counterclaim alleg-

ing faulty equipment, poor installation and damages of $5000. Plaintiff replied to the answer and answered the counterclaim. The defendant, by leave of court, then filed a second amendment to her answer designated "Special Affirmative Defense," being count 2. Plaintiff moved to dismiss this count and, on the hearing, defendant moved, and was granted leave, to withdraw her counterclaim instanter. Plaintiff's motion to strike defendant's count 2 was then denied and plaintiff was given leave to reply thereto in twenty days. A reply was filed and defendant then moved for judgment on the pleadings which the court allowed as to count 2, with costs for defendant and execution.

The special affirmative defense was filed by leave of court, setting up that plaintiff was in business under an assumed name and was suing on a contract made under an assumed name, within the contemplation of sections 1 to 5, inclusive, of an act in relation to the use of assumed names; (Ill. Rev. Stat. 1947, chap. 96, pars. 4 to 8, incl.) that plaintiff had failed to register the assumed name and had not filed the certificate required by law; that plaintiff's contract was therefore against public policy and for that reason plaintiff was unlawfully in business and could not legally enforce the contract. The reply to the special affirmative defense admitted that plaintiff was doing business under an assumed name.

The controlling errors assigned are that the court erred in denying plaintiff's motion to strike defendant's count 2 of the answer and rendering judgment against plaintiff upon the defense interposed therein, and erred in holding that the said act above named destroyed the obligation of plaintiff's contract.

The trial court held that the contract made by plaintiff under the assumed name of Modern Furnace Company, to install a furnace in defendant's residence, was unenforceable because plaintiff had not registered the name with the

county clerk under said act, which provides that no one shall conduct or transact business under an assumed name unless the name is registered with the county clerk in the manner provided by the act, and providing a penalty of a fine of $25 to $100 or imprisonment of 10 to 30 days, or both, for violations thereof. Ill. Rev. Stat. 1947, chap. 96, par. 8.

Appellant, admitting this court has not passed upon this act, relies upon the proposition that courts will not hold contracts void as against public policy if there is a ground upon which they may be sustained, and contends that laws restricting the use of business names should be strictly construed. In support of this proposition the case of *People ex rel. Power* v. *Rose,* 219 Ill. 46, is cited. There, the Secretary of State refused to issue a certificate for the organization of a new corporation under the name of "United States Express Company," there already being an old company which had been doing business under the same name for more than 50 years. It was there contended the old company had violated the statute. It was, however, there observed by the court that the statute does not denounce the assuming of a corporate name, but the putting forth of a sign or advertisement, and thereby assuming a corporate name for the purpose of soliciting business; and while this case would not be controlling under the facts that exist in the instant case, it is pertinent to observe that the court there held that the criminal statute referred to did not make contracts, made by persons guilty of the offense prohibited, invalid, but merely provided that such persons would be liable to pay a certain fine; and further observed that a violation of the statute could be attended with no other consequences than merely the infliction of the penalty therein prescribed.

The plaintiff cites a number of foreign cases as authority and urges the majority rule sustains the validity of contracts and transactions entered into without compliance

with the statutes. To refer to or attempt to analyze the many cases sustaining the validity or enforceability of contracts where statutes are violated, as against the many cases where the rule obtains denying validity or enforceability, would aid but little in a correct determination of the question presented in the instant case. Many of the cases pertain to different statutes where different situations exist, and to attempt to say just what the weight of authority is seems to be impossible, as the cases cannot be classified covering a specific rule which has been laid down.

The question presented to us is to determine the intent of the legislature as to whether or not it intended, in addition to subjecting the plaintiff here to an expressed penalty, to impose the additional and greater penalty of refusing him any relief on his contract entered into without compliance with the statute. In cases of this character, whatever decisions to the contrary may be found, there is no inflexible rule of arbitrary application for the determination of the effect by implication of the prohibitory statute. The question presented is one of legislative intent to be gathered from the language of the statute read in the light of the circumstances with which it deals, with such considerations of public policy as may be involved in the conflicting claims of construction. Whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it does not seem reasonable, under conditions where a person has furnished material and labor on a just basis, without fraud on his part, that it be taken for granted that the legislature meant the contract entered into for such purpose is to be held void in the sense it cannot be enforced in a court of justice. Certainly, the installation of a furnace here involved cannot contravene the public policy of the State, and there is no reason why its proved value should not be paid for.

A reading of this act as to its prohibition does not specifically set out that such transaction as is now before us

is prohibited. It only fixes a penalty for persons conducting a business in violation of the act. To deny recovery in a case, such as the instant case, would be affording a means by which a person having received a benefit from another would be enabled to retain it without compensation. A careful examination of the statute before us presents two pertinent facts: (1) That it expressly imposes a penalty for nonobservance in the form of a fine or imprisonment; and, (2) that no further penalty or consequence is attached. This, it would seem, is a significant indication of a purpose that the penalty expressed in that particular kind of case should be exclusive.

The defendant cites the case of *Mickelson* v. *Kolb,* 337 Ill. App. 493, and contends the rule as announced there was followed in a later case in that court. It was said in the *Mickelson case,* "The same rule announced in the cases cited, applicable to the failure of a real estate broker to obtain a license, and denying to him the right to recover a brokerage commission, applies with equal force to the instant case." There is considerable difference in the effectiveness of the two statutes as disclosed by the provisions thereof. Under the act pertaining to real-estate brokers and salesmen, it is specifically provided in section 2b, in part, "No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Act * * *." (Ill. Rev. Stat. 1947, chap. 114½, par. 2b.) In that act further penalties were fixed for violation for conducting business or acting as a real-estate broker without a certificate of registration issued by the Department of Registration and Education.

The act pertaining to assumed business names makes no restriction pertaining to suits or recovery, but specifically provides a penalty for conducting or transacting a business

in this State under an assumed named in violation of the statute. Under the provisions of the two statutes the same rule would not be applicable, and it seems that on this basis the Appellate Court arrived at their conclusion in the *Mickelson case.*

Among the many cases on this question we find a rather close analogy in the Connecticut case of *Sagal* v. *Fylar,* 89 Conn. 293, 93 Atl. 1027. That court, in passing upon a provision of the penalty as therein contained, said, "The remedial purpose of the statute manifestly was that the public should have ready means of information as to the personal or financial responsibility behind the assumed name. Its aim was the protection of those who might deal with, or give credit to, the fictitious entity. It, obviously, was not to provide a means by which persons having received a benefit from another should be enabled to retain it without compensation, and to repudiate any agreement for compensation. Doubtless a penalty which held out a reasonable promise of securing compliance with the statute was intended; but one which had in it the possibility of a year's imprisonment would seem to be adequate to accomplish that end, and it would seem that a further penalty such as the defendants contend for would create a cumulative penal result with which the evil sought to be remedied was scarcely commensurate."

In the instant case, not only is a person subject to a fine of $25 to $100, or imprisonment in the county jail for not less than 10 days nor more than 30 days, or both so fined and imprisoned, but each day any person or persons conducts a business in violation of the act, such offense shall be deemed a separate offense. It would seem from this that the legislature's intent was that the penalty expressed in the statute should be exclusive. Otherwise, no doubt, they would have said so.

It was said in the case of *Hayes* v. *Providence Citizens' Bank and Trust Co.* 218 Ky. 128, 290 S.W. 1028, (the

whole court sitting,) where the statute imposed a penalty of a fine or imprisonment but did not expressly impose any further penalty, "This is a potent indication of a legislative purpose that the penalty expressed should be exclusive. The purpose of the penalty is to secure obedience to the statute to the end that its object may be accomplished. But the object of the statute, as above stated, is certainly not accomplished or even furthered by adding to the penalty expressly imposed the additional one of the loss of goods, chattels, or services sold or performed by one doing business in violation of the statute. Such a cumulative penal result is scarcely commensurate with the evil sought to be remedied. A cursory reading of our Statutes discloses that, when the Legislature intended such a cumulative penalty, it was careful to expressly say so." In the instant case, the legislature provided for no cumulative penalty.

The appellee cites the case of *Colbert* v. *Ashland Construction Co.* 176 Va. 500, 11 S.E. 2d 612, along with several other foreign cases in support of the opposite rule. We are of the opinion, however, the rule, as above pointed out, is the one properly to be followed unless there should be a provision which specifically provides for additional penalty. This also follows the rule of strict construction of such statute.

Under our views heretofore expressed, it is unnecessary to discuss the question of any ruling violating section 14 of article II of the State constitution, which prohibits the impairment of the obligation of contracts.

For the reasons stated above, the judgment is reversed and the cause remanded to the circuit court of Cook County, with directions to redocket and sustain plaintiff's motion to strike the special defense in count 2 of the answer of the defendant, and proceed accordingly.

*Reversed and remanded, with directions.*