## Gillingham, Jr., v. Cuthbert et ux.

320

*Reuben Singer*, for plaintiff.
*George A. Butler*, for defendants.

OLIVER, P. J., February 25, 1954.—Plaintiff, Lewis Gillingham, Jr., alleges: that he is now, and since 1937 has been a duly licensed real estate broker in Philadelphia, Pa.; that defendants, Paul O. Cuthbert and Ruth O. Cuthbert, his wife, were the owners in fee of premises 5720 West Jefferson Street, Philadelphia, at all times herein mentioned; that during the first part of April 1953 plaintiff and defendants entered into an oral contract relating to the sale of this property whereby plaintiff was appointed exclusive agent to sell the property for about $13,000, at a commission of five percent of the purchase price; that plaintiff procured a buyer at a price of $13,000 and a contract of sale was thereupon signed and approved by defendants on April 15, 1953; that plaintiff then demanded his commission of $650, but defendants, intending to defraud plaintiff of his commission, attempted to discharge him from his agreement before settlement, and have refused and continued to refuse to pay him his fee.

Plaintiff's prayer is for an injunction to enjoin defendants from conveying the premises; for a decree that defendants hold $650 as trustees for plaintiff, and for such other relief as this court may deem proper.

Defendants, Paul O. and Ruth O. Cuthbert, admit ownership of the premises, but deny that plaintiff was a licensed real estate broker at the time the services,

if any, were rendered. They allege there was no exclusive agency agreement, and that they agreed only to "consider" a selling price of $13,500. They allege they themselves procured the purchaser for a price of $13,500, and that plaintiff then offered the premises to the same purchaser for $13,000, stating that he agreed to absorb the $500 difference from his commission; that with this understanding, they approved the agreement of sale.

By way of new matter, defendants again allege plaintiff was not a duly licensed real estate broker at the time the services were rendered; that defendants produced the purchaser, and that plaintiff agreed to absorb the $500 difference from his commission.

Defendants' prayer is for a dismissal of the complaint with costs.

Plaintiff denies all the allegations set forth in the new matter, and again alleges he is entitled to equitable relief because of the averments of fraud set forth in the original complaint.

### Findings of Fact

The chancellor makes the following findings of fact:

1. After complying with all the statutory requirements of the Pennsylvania Real Estate Broker's Act of May 25, 1945, P. L. 1023, 63 PS §431, et seq., which requires successful completion of a written examination and compliance with all other prerequisites of said act, plaintiff was issued broker's license no. 7252 on October 29, 1937.

2. Each year thereafter plaintiff registered with the Department of Public Instruction as a real estate broker, as required by section 438 of the act.

3. Plaintiff, through an oversight, failed to complete his annual registration for the year 1953 before the deadline of March 1, 1953, but sent in his $5 registration fee on May 1, 1953, and his annual registration was dated May 5, 1953.

4. Defendants, Paul O. Cuthbert, and Ruth O. Cuthbert, his wife, were the owners in fee of premises 5720 West Jefferson Street, Philadelphia, on December 1, 1952.

5. On or about December 1, 1952, plaintiff and defendants orally agreed that plaintiff was to act as agent for the purpose of procuring a purchaser for this property at a price of approximately $13,000.

6. In the early part of January 1953 plaintiff placed a "For sale" sign upon the front lawn of the premises, which sign had upon it, inter alia, plaintiff's telephone number.

7. During the first part of April 1953 one Mario D'Antonio, the present legal owner of the premises, observed this sign, which was still on the premises, telephoned plaintiff, and through plaintiff made an appointment to view the house.

8. As a result of negotiations between D'Antonio and plaintiff, an agreement for the sale of the property at a price of $13,000 was signed on April 15, 1953, by plaintiff, Mario D'Antonio and Amelia D'Antonio, his wife, the purchasers, and was approved by defendants on that same day.

9. On July 27, 1953, defendants, by letter, offered to pay plaintiff the sum of $130 for his commission, and on that date attempted to discharge him as agent.

10. At or about the time the contract of sale for this property was signed, defendants instructed plaintiff to have separate checks at settlement, one for wife defendant, and one for husband defendant.

11. After the contract of sale was signed, and before settlement, wife defendant informed plaintiff that she intended to leave Philadelphia shortly after settlement to live with her relatives in Georgia.

12. At about that same time, husband defendant informed plaintiff he also intended to remove from the jurisdiction shortly after settlement.

13. Shortly after this present suit was commenced, settlement for this property took place at the Land Title Bank & Trust Company, Philadelphia, and this action being indexed as lis pendens, the settlement funds were withheld by that company, pending outcome of this suit.

### Discussion

Plaintiff is a real estate broker. He sued defendants for his commission due on the sale of certain realty. The defense set up is that, at the time of the sale, plaintiff was not a duly licensed real estate broker, as required by the legislature of this jurisdiction. There is also a dispute as to the amount of commission due. However, before looking into that question, we must decide whether or not plaintiff has any standing to sue. If the Pennsylvania Real Estate Broker's Act of May 25, 1945, P. L. 1023, 63 PS §431 et seq., is a bar to plaintiff's recovery, there will be no need to inquire into the other defenses. References herein to sections of the Broker's Act are from 63 PS §431, et seq.

This matter is in equity because of allegations of fraud in that defendants were wrongfully attempting to deprive plaintiff of his broker's commission, and intended, without paying him, to remove from the jurisdiction with the settlement proceeds in which he claims an interest. The testimony in fact disclosed that defendants had, before this dispute arose, requested plaintiff to have separate checks at settlement, one for the wife, and one for the husband. Wife defendant had also informed plaintiff she intended to remove to Georgia to live with her relatives, while husband defendant told plaintiff he too intended to remove from this jurisdiction. This justified plaintiff in tying up the settlement funds, and in asking for relief from the chancellor. Having once considered any aspect of the matter, the entire controversy is properly before this

court. Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11 (1926). '

Section 446 of 63 PS provides as follows:

"No action or suit shall be instituted, nor recovery therein be had, in any court . . . by any person . . . for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person . . . was duly licensed hereunder as real estate broker at the time of the doing of such act or the rendering of such service."

The basic question here is whether, under the facts of this case, the above section of the act precludes recovery by plaintiff.

First of all, we must determine whether the statute was enacted as a *revenue* or as a *regulatory* measure. If it is simply a revenue measure, then failure to procure a license does not render the contract illegal or void, nor prohibit recovery thereon. But if the statute was enacted for the public protection, to exact qualifications of the applicants for the protection of the public, even though its object also includes raising revenue, then, under the police power of the State, it is proper to invalidate any contracts made in violation of the statute. The Supreme Court of Pennsylvania has interpreted the present type of statute in the latter manner. See: Luce v. Cook, 227 Pa. 224 (1910); Saxton v. Morris, 229 Pa. 343 (1911); Meyer v. Wiest, 250 Pa. 573 (1915).

If, then, plaintiff was in fact not a duly licensed broker, he cannot recover in this action.

It would seem, at first blush, that plaintiff is barred from recovery in this case, since it is admitted the contract of sale was signed sometime before plaintiff sent in his annual registration fee, and after the expiration date of his previous year's registration as a

broker. But let us look at the peculiar facts of this case.

Plaintiff had been continuously a licensed real estate broker, under the above act, since 1937. He is required, under the act, to *register* each year with the proper department, before March 1st. At the time the parties to this action entered into the contract for the sale of the realty in December of 1952, plaintiff was, without doubt, a duly licensed broker. In January of 1953, while still properly licensed, he put a "For sale" sign in front of defendants' house, and began showing prospects through it. On March 1, 1953, he neglected to send in his annual $5 registration fee. In the first part of April 1953 he contacted a purchaser, who signed a contract of sale on April 15, 1953. During the first part of May plaintiff apparently realized he had forgotten his annual registration, and sent in his fee to the department, receiving his 1953 registration as of May 4, 1953. Thereafter, on July 15, 1953, settlement took place, but plaintiff was not present, for other reasons, to be mentioned later.

Thus we have a case where a contract was made between a property owner and a licensed real estate broker to sell a house; the broker produced a buyer, but the buyer was obtained and the contract of sale was signed in a period of about 60 days during which the broker had neglected to register for the then current calendar year. The service is performed when the parties are brought together and the contract of sale is consummated: Lessy et al. v. Fletcher, 89 Pa. Superior Ct. 521 (1926). May defendants now set up as a defense the fact that the broker was not duly licensed under the act of legislature?

The answer is no, since, under the facts of this case, the broker *was* duly licensed under the act. This conclusion is sustained by the following reasoning.

It is obvious the purpose behind the entire act was

to prevent harm to the public. The legislature deemed it wise to require any persons engaged in the business of buying or selling real estate to submit themselves to certain required written examinations, and to meet certain other prerequisites, in order that it may be determined whether such persons are properly qualified to hold themselves out to the public as real estate brokers. Upon completion of the examination and these other specified requirements, the license is issued. But each year thereafter, on or before March 1st, every person who is licensed to practice is required, under subsection (3) of 63 PS §438, to *"register* annually" with the Department of Public Instruction. No examination of any sort is required for the annual registration. This is a purely ministerial operation, and the department automatically sends out a small card to the broker showing the current registration upon receipt of the $5 fee. Under the next subsection of the act the State Real Estate Commission is required to publish annually a list of all persons registered for that particular year. If a broker neglects to send in his registration fee on time, his license is not automatically suspended or revoked. A very elaborate procedure, requiring proper notice and hearings, is set forth in the act for that purpose. We conclude, then, that in such a case, the broker who is slow in reregistering is still duly *licensed,* although he is not registered for the current year.

That there is a distinction between licensing and registering in the act is clear, since criminal penalties for violation of the act are broken down into two sections, 63 PS §442(a) and (b). These criminal provisions must be considered along with the statutory provision concerning the denial of recovery to one not licensed as a broker. This is so because laws or parts of laws are in pari materia when they relate to the same persons or things, and, under the Pennsylvania

Statutory Construction Act, laws in pari materia must be construed together. See Act of May 28, 1937, P. L. 1019, art. IV, sec. 62, 46 PS §562. In section (*a*) of 63 PS §442, a $50 to $100 fine may be imposed for acting in the capacity of a real estate broker or salesman *without a license;* but in section (*b*) of 63 PS §442, a $10 fine may be imposed on anyone who fails to apply for a renewal of his *certificate of registration* before the renewal date, and who thereafter continues the practice of real estate broker or salesman. If the broker had no *license* after the renewal date, section (*b*) would be meaningless, since he would be practicing without a license, and would be subject to the more drastic provisions of section (*a*). Construing these criminal sections of the act along with the licensing provisions, we conclude, then, that plaintiff was still duly *licensed* under the act, and that he was merely not properly *registered* for the then current year. Failure to register, while subjecting plaintiff to a possible $10 fine, does not preclude him from bringing suit to recover his fee, since he was still duly licensed at the time his services were performed.

But even if we had decided plaintiff was not duly licensed under the act of legislature, we would be faced with a situation where a person, who is protected by a certain statute, turns around and uses that statute for an improper purpose. A court in equity will not tolerate such action. The theory behind the act is that only those persons properly qualified should represent the public; plaintiff here had met all the qualifications, and has been licensed as a broker for many years. It was of little consequence that he had neglected to complete his annual registration before the contract of sale was signed. The purpose of the act had been fulfilled. Thus, even if we had decided plaintiff was not a duly licensed broker under the act, we would not allow de-

fendants to use the mere lack of prompt re-registration to escape their just obligations.

The cases in this jurisdiction treating of the problem have generally denied recovery to plaintiff, but they are distinguishable from the case at bar. See, for example, Burns v. Gartzman et ux., 139 Pa. Superior Ct. 453 (1939), where the broker was from a different State, and had never previously been *licensed* in Pennsylvania. Lennox v. Waters et al., 93 Pa. Superior Ct. 178 (1927), is not controlling, since there the contract of sale was signed after the annual registration was issued, and it was not necessary in that case to distinguish between annual registration and initial licensing. None of the cases which research has disclosed treat of the specific problem involved in the instant case. In all the cases where the court has denied recovery, it will be seen, upon analysis, that either a broker from a foreign State, or a person never previously licensed in the jurisdiction, was involved. That is, the *public policy* of protecting individuals, who might have occasion to commission real estate brokers to represent them in important matters, was fulfilled. But the statute was certainly not intended to deprive a man of his just reward after he had fully qualified himself as a broker in this State, and had merely failed to perform a minor duty, technical or procedural in nature. See Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552(5) as to interpretations of statutes.

Accordingly, we conclude that plaintiff is not barred from bringing this suit by the Act of May 25, 1945, P. L. 1023, 63 PS §431, as amended. We, therefore, turn to the merits of the case.

There is no truth whatever in defendants' allegations that they themselves produced the purchaser. Defendants in their answer swore that they were the ones who produced the purchaser, and that they therefore owed no commission to plaintiff. At the trial,

however, it was clear the defendants had sworn to an obvious falsehood. They finally admitted plaintiff was the one who produced the purchaser.

The testimony of a disinterested witness, the purchaser himself, establishes beyond a doubt that it was because of plaintiff's efforts the transaction was consummated. The chancellor was very much impressed with the simple and clear testimony of the purchaser. His statements corroborated the testimony of plaintiff in many important details. On the other hand, there were discrepancies between the testimony of the husband defendant and wife defendant, and each testified to matters which, if true, would have been of importance and these were not even mentioned by the other defendant. In short, plaintiff's testimony was clear and convincing, and was supported by the testimony of the purchaser, while that of defendants was disjointed and evasive, replete with statements of doubtful veracity, and not worthy of belief.

We conclude, then, that there was an agreement between the parties that plaintiff was to receive five per cent of the selling price if he produced a purchaser. He did produce a purchaser, but defendants contend that he agreed, at the time the contract of sale was signed, to accept less than his agreed five per cent commission.

To support their position, defendants testified that, on the occasion when the agreement was reached, when all parties were present in the house which was sold, plaintiff quoted purchaser a price of $13,500. The purchaser declined this offer, and then, according to defendant's testimony, plaintiff offered to let the property go for $13,000, telling defendants at that time he would absorb the $500 difference from his commission.

But the testimony of the purchaser as to the conversation that took place at that time shows that nothing

to that effect was said by plaintiff, either at the time of the inspection of the home when the parties agreed on a price of $13,000, or later, when the contract of sale was signed.

In addition, it is not likely that a broker would absorb a $500 deduction out of a total commission of only $650.

Defendant's other defense, that the agreement between the parties was that plaintiff was to receive everything *over* $13,000, is likewise not plausible. It is not probable that plaintiff would sell the property for $13,000 if he knew, by doing so, he would get absolutely no commission for his services.

The entire defense on the merits of this case is, in effect, reduced to a question of credibility and, for the reasons stated above, we are convinced of the truth of plaintiff's testimony, especially in light of its strong corroboration by a disinterested witness, the purchaser, and we disbelieve defendants.

Clearly, defendants recognized the original contract, and their obligation to pay, or they would not have written the letter in evidence offering plaintiff a fee of only $130. If there was no contract, or if they themselves produced the purchaser, there was no reason why they should offer plaintiff any money at all.

We find that defendants, notwithstanding their just obligation, have seized upon a highly technical point of law, together with a poorly fabricated and untruthful tale of partial recission of the contract, to defeat the rights of plaintiff.

Accordingly, defendants will be ordered and directed to pay over to plaintiff the sum of $650, with interest from April 15, 1953, the date of the contract of sale. In addition, defendants will be enjoined and restrained from withdrawing any of the Jefferson Street property settlement funds now on deposit with the Land Title Bank & Trust Company of Philadelphia, until the

amount due under this decree is paid to plaintiff, except that defendants may authorize the Land Title Bank & Trust Company to make payment on their behalf to plaintiff from said fund and may then withdraw the balance, if any.

*Conclusions of Law*

The chancellor draws the following conclusions of law:

1. This court has jurisdiction in equity.

2. Plaintiff was a licensed real estate broker under the Act of May 25, 1945, P. L. 1023, 63 PS §431 et seq., as amended, continuously since 1937, to and including the year 1953.

3. Failure to complete his annual registration by the date specified under section 438 of the Real Estate Broker's Act, while subjecting plaintiff to a possible $10 fine, did not preclude him from bringing an action to recover commissions earned after the date for annual registration specified in the act, especially where failure to register on time was unintentional and was subsequently corrected, and where plaintiff had previously completed all requirements for the issuance of, and had received, his original broker's license and had registered as such broker consistently for a long period of years.

4. Defendants were the owners in fee of premises 5720 West Jefferson Street, Philadelphia, on December 1, 1953, and at or about that time employed plaintiff as their real estate agent to sell the property at a commission of five per cent of the selling price.

5. Plaintiff obtained a purchaser and concluded the sale of the premises for $13,000 by written contract on April 15, 1953, and that contract was duly approved on that day by defendants.

6. Defendants are equitably and legally indebted to plaintiff in the sum of $650, with interest thereon from April 15, 1953.

*Decree Nisi*

And now, to wit, February 25, 1954, it is ordered, adjudged and decreed as follows:

1. Defendants Paul O. Cuthbert and Ruth O. Cuthbert, his wife, are ordered and directed to pay over to plaintiff the sum of $650, with interest thereon from April 15, 1953.

2. Defendants are enjoined and restrained from withdrawing any of the Jefferson Street property settlement funds now on deposit with the Land Title Bank & Trust Company of Philadelphia, until the amount due under this decree is paid to plaintiff, except that defendants may authorize the Land Title Bank and Trust Company to make payment on their behalf to plaintiff from the fund, and may then withdraw the balance, if any.

3. Defendants are ordered to pay the costs.

The prothonotary will enter this decree nisi and notify the parties or their counsel that, unless exceptions thereto are filed within 20 days, the decree nisi will become final in the case.