GEORGE H. WHITE, Plaintiff-Appellant, *v.* CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-364

Opinion filed August 10, 1981.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Aaron M. Spiezer, of counsel), for appellant.

Kenneth M. Zak, of Fifielski & Zak, and Joel M. Hellman, of Pressman & Hartunian, Chartered, both of Chicago, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal by a real estate broker from a judgment denying him a commission. Briefly stated, the pertinent facts as disclosed by the amended complaint and answers to interrogatories are:

In October 1974, plaintiff George H. White was a real estate broker and Fred W. Owens was a real estate salesman. At that time, Owens' certificate of registration as a salesman was in the possession of another broker by whom he was then employed. In October 1974, defendant Chicago Title and Trust Company, as trustee, held legal title to certain real estate in Des Plaines, Illinois. Defendants Paul Heuses, Robert W. Geinecke, Paul Marquette, Lee Polly and Leo F. McLennon were the beneficiaries of that trust. On October 25, 1974, Chicago Title and Trust Company granted Owens, acting as an agent of plaintiff, an option to purchase the real estate. The option agreement, among other things, provided that if the option were exercised, the optioner would pay Owens a brokerage commission of 6 percent of the sales price. Owens' certificate of registration as a salesman was transferred to plaintiff White on December 1, 1974. On April 21, 1975, the option was properly extended. On November 22, 1975, Owens sold his option rights to defendants John Koziol and Robert Wedgewood, who subsequently transferred those rights to defendant Grove Towers, Inc., of which they were president and secretary respectively. The sale of the option agreement to Koziol and Wedgewood yielded Owens a profit of $40,000. On January 3, 1977, Grove Towers, Inc., acquired the real estate by purchase. The purchase contract provided that Grove was responsible for Owens' commission. Demands by White and Owens for the real estate commission were denied by defendants and suit was filed by White on November 21, 1978.

On September 26, 1979, plaintiff in answer to interrogatories disclosed that Owens did not register to sell real estate as White's employee until December 1, 1974. Defendants moved for summary judgment, which was granted on the ground that the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5701 *et seq.*) barred his action because Owens was not registered as a salesman of plaintiff White at the time the option agreement was executed.*

The purpose of the Real Estate Brokers and Salesmen License Act has been stated in *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 551, 370 N.E.2d 1198, as "the prevention of injury to the public by assuring that the

---

* The Real Estate Brokers and Salesmen License Act was formerly included in chapter 114½ of the Illinois Revised Statutes. References to the Act in this opinion will be to the appropriate paragraphs in chapter 111.

occupation will be practiced with honesty and integrity, excluding from the profession those who are incompetent or unworthy." In addition, it has been held that the Act is not a penal measure, to be strictly construed against the State, but a broad statutory system which is remedial and therefore should be liberally construed. *Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 376 N.E.2d 255.

Section 1 of the Act (Ill. Rev. Stat. 1979, ch. 111, par. 5701) states that "[t]he intent of the legislature in enacting this statute is to evaluate the competency of persons engaged in the real estate business for the protection of the public."

Section 3 provides:

> "It is unlawful for any person to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a certificate of registration issued by the Department of Registration and Education. No association, partnership or corporation shall be granted a certificate of registration, or engage in the business or capacity, either directly or indirectly, of a real estate broker, unless every member of such association, or every partner in such partnership or every officer of such corporation who actively participates in the brokerage business of such association, partnership or corporation holds a certificate of registration as a real estate broker, and unless every employee who acts as a salesman for such association, partnership or corporation holds a certificate of registration as a real estate salesman." Ill. Rev. Stat. 1979, ch. 111, par. 5703.

Section 5 provides that "[t]he commission of a single act prohibited by this Act constitutes a violation of this Act." Ill. Rev. Stat. 1979, ch. 111, par. 5712.

Section 7 explicitly states:

> "No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Act to other than registered real estate brokers or real estate salesmen unless such person, copartnership, association, or corporation was duly registered hereunder as a real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service." Ill. Rev. Stat. 1979, ch. 111, par. 5714.

Section 10 requires a written examination by each applicant for a certificate of registration as a broker or salesman to determine the trustworthiness and competency of the applicant. It further provides:

"(c) No applicant shall engage in the real estate business as a broker or salesman until he has satisfactorily passed the examination, complied with other requirements of this Act, and until a certificate of registration has been issued to him or he has received a letter from the Department authorizing him to so engage pending receipt of a certificate of registration.

＊ ＊ ＊

(e) The Department shall issue to each applicant entitled thereto, a certificate of registration in such form and size as shall be prescribed by the Department. The person to whom such a certificate is issued is hereafter designated 'registrant'. *This certificate shall show the name and the principal business location of the registrant and, in case of a real estate salesman's certificate, shall show the name of his employer.* ＊ ＊ ＊ The certificate of each real estate salesman shall be delivered or mailed to the registered real estate broker by whom such real estate salesman is employed, if he is employed by a registered broker and shall be kept in the custody and control of such broker.

The Department shall prepare and deliver to each registrant a pocket card, not larger than 2¼ inches in width and 3¾ inches in length, which card among other things shall contain the name and address of the employer, in case the registrant is a salesman ＊ ＊ ＊:

(f) ＊ ＊ ＊ Every certificate of registration issued under this Act as a salesman shall expire on March 31 of each odd numbered year. The holder of a certificate of registration may renew such certificate during the month preceding the expiration date thereof by paying the required fee. ＊ ＊ ＊

(g) In the absence of any reason or condition which might warrant the revocation, suspension or refusal to issue a certificate, the Department shall issue a new certificate for each biennium upon receipt of the written application of the registrant and the biennial fee therefor as herein required." (Emphasis added.) Ill. Rev. Stat., 1980 Supp., ch. 111; par. 5727.

Section 13 provides:

"(a) *Each real estate broker* shall maintain a definite office or place of business within this State for the transaction of real estate business, shall conspicuously display an identification sign on the outside of his office of adequate size and visibility and *shall conspicuously display* his certificate in his office or place of business and also the *certificate of all real estate salesmen employed by him.*

＊ ＊ ＊

(c) When any real estate salesman shall be discharged or shall

terminate his employment with the real estate broker by whom he is employed, such real estate broker shall immediately deliver or mail by registered mail to the Department such real estate salesman's certificate. * * * *It shall be unlawful for any real estate salesman to perform any of the acts contemplated by this Act either directly or indirectly under authority of such certificate from and after the termination of his employment.* Another certificate shall not be issued to such real estate salesman until he shall return his former pocket card to the Department or shall satisfactorily account to it for same. Not more than one certificate shall be issued to any real estate salesman for the same period of time. *A salesman shall not negotiate for his employer until he has received from the Department his pocket identification card either on original application or transfer of employer or a letter from the Department authorizing him to proceed.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 111, par. 5730.

Section 15 details the causes for which the Department "may refuse to issue or *renew*, may suspend or may revoke any certificate of registration * * *:

* * *

(e) Where the registrant in performing or attempting to perform or pretending to perform any act as a real estate broker or salesman, or where such registrant, in handling his own property, whether held by deed, option, or otherwise, is found guilty of:

* * *

6. Representing or attempting to represent a real estate broker other than the employer." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 111, par. 5732.

Section 18 (Ill. Rev. Stat. 1979, ch. 111, par. 5736) makes violation of provisions of the Act (with one exception not here pertinent) a Class C misdemeanor. A class C misdemeanor is punishable by imprisonment for not more than 30 days or a fine of not to exceed $500 or both. Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—3(a)(3), 1005—9—1(a)(3).

Section 22 (Ill. Rev. Stat. 1979, ch. 111, par. 5740) provides: "Engaging in business as a real estate broker, broker-salesman or salesman by any person in violation of this Act is declared to be inimical to the public welfare and to be a public nuisance.

In *Central National Bank v. Alexander Marketing, Inc.* (1977), 47 Ill. App. 3d 58, 361 N.E.2d 766, the court, in affirming the denial of a real estate commission to those not registered real estate brokers or salesmen, stated (47 Ill. App. 3d 58, 59-60):

"The Illinois Real Estate Brokers and Salesmen Act attempts to protect the public by evaluating the competence of persons or

legal entities in the real estate business through an examination and licensing system. It enforces this system, in part, by prohibiting unlicensed persons acting as brokers and salesmen from collecting compensation for any services they may render. If anyone dealing in real estate transactions was legally entitled to be paid for such services regardless of whether he was properly licensed and registered, the regulation of real estate brokers and salesmen would become meaningless.

"Because the defendants were not registered as real estate salesmen or brokers, and did not qualify under the statutory classifications which would have exempted them from the registration requirements, they were not, as a matter of law, entitled to compensation for their services."

Plaintiff contends that the provisions of the Act imposing criminal penalties are the exclusive remedy and that the failure of Owens to have his certificate transferred to plaintiff cannot defeat his right to a commission. We disagree.

In *Usher v. McGowan* (1958), 20 Ill. App. 2d 201, 155 N.E.2d 830, the court affirmed the denial of a real estate commission to an unlicensed broker. The ordinance of the City of Chicago in one section imposed a penalty by a fine for violation of the ordinance, but another section provided "No person shall pay any commission or other compensation to any person for negotiating contracts of real estate other than to real estate brokers licensed under this chapter." The court, in holding that there could be no recovery, stated (20 Ill. App. 2d 201, 203-04):

"In addition to the fine against a person acting as a broker without a license, provided for by ch. 113, sec. 27, there is the further provision in section 29 against paying 'commission or other compensation' to any such person. Thus the intention of the city council was not only to regulate the business by imposing a fine but to effectually render contracts like the instant one unenforceable. The penalty provision is not exclusive and the rule in Grody v. Scalone, 408 Ill. 61, does not apply. The same is true of First National Bank of Millstadt v. Freant, 7 Ill. App. 2d 204, where a fine only is imposed under an ordinance 'not purporting to do anything but secure revenue.' Such an ordinance does not invalidate a brokerage contract made in violation of it, 169 A. L. R. 772, 773. But where the ordinance expressly provides that no compensation can be recovered by one acting as a broker without a license 'It goes almost without saying that under such an act a broker is without right to recover compensation for his services performed while he was unlicensed,' 169 A. L. R. 775."

In *Grody v. Scalone* (1950), 408 Ill. 61, 96 N.E.2d 97, cited by plaintiff, the court contrasted the provisions of the assumed name act (Ill. Rev. Stat. 1947, ch. 96, pars. 4 through 8) with the provisions of the Act here involved, pointing out (408 Ill. 61, 65-66):

"There is considerable difference in the effectiveness of the two statutes as disclosed by the provisions thereof. Under the act pertaining to real-estate brokers and salesmen, it is specifically provided in section 2b, in part, 'No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Act * * *.' (Ill. Rev. Stat. 1947, chap. 114½, par. 2b.) In that act further penalties were fixed for violation for conducting business or acting as a real-estate broker without a certificate of registration issued by the Department of Registration and Education.

The act pertaining to assumed business names makes no restriction pertaining to suits or recovery, but specifically provides a penalty for conducting or transacting a business in this State under an assumed name in violation of the statute. Under the provisions of the two statutes the same rule would not be applicable, and it seems that on this basis the Appellate Court arrived at their conclusion in the *Mickelson* case. [*Mickelson v. Kolb* (1949), 337 Ill. App. 3d 493, 86 N.E.2d 152.]"

*Bergeron v. Mumphrey* (La. App. 1949), 38 So. 2d 411, was concerned with a situation similar to the one before us. There plaintiff was a licensed real estate salesman working for, and licensed under, a real estate broker named Smith. On April 7, 1947, plaintiff met with defendant, another real estate broker. During this meeting plaintiff directed defendant to Hickox, a prospective seller of real estate, and the parties agreed on a commission to be paid to plaintiff in the event that Hickox' property were sold. Hickox' real estate was thereafter listed with defendant. On April 10, 1947, plaintiff terminated his employment with Smith and promptly applied for a new salesman's license under defendant's brokerage license. On May 5, 1947, the State registration board advised defendant that plaintiff's application was approved. On May 28, 1947, Hickox' property was sold and defendant received a commission on the sale; however, defendant refused to pay any part of the commission to plaintiff. Plaintiff sued and obtained a judgment in his favor.

On appeal, the judgment was reversed. The court held that at the time plaintiff obtained the listing his conduct was in violation of the pertinent Louisiana licensing act because he was licensed as a salesman

under Smith's brokerage license, rather than defendant's brokerage license. The court held that plaintiff could not recover based on conduct in violation of the statute. The court construed the pertinent Louisiana statute to prohibit salesmen from working for one broker while licensed under another broker. It reached this conclusion based on statutory language which required (a) a salesman to designate the employer by whom he was employed, (b) a broker to display the licenses of his salesmen and (c) a salesman to obtain a new license when he changed employment. Similar provisions are contained in sections 10(e), 13(a) and 13(c) of the Illinois act set out above (Ill. Rev. Stat. 1979, ch. 111, pars. 5727(e), 5730(a), 5730(c)).

The court also found that the relicensing of salesmen upon changes in employment was an integral part of the legislative purpose of the statute. It based this conclusion on language of the statute which provided that the State licensing board had the power to suspend or revoke licenses and on other language which required a salesman-applicant to set forth information about his prior employment. The court concluded (38 So. 2d 411, 413):

> "It seems clear to us that it was the purpose of the framers of the act to give to the issuing board the right to investigate and to determine why the former license had been terminated before issuing the new one, and that it was contemplated that in the interim the salesman should not engage in business."

Section 13(c) of the Illinois Act explicitly prohibits a salesman from acting for his employer until he has received his identification card on original application or transfer of employment or a letter from the Department to proceed. Ill. Rev. Stat. 1979, ch. 111, par. 5730(c).

The *Bergeron* court concluded that, because a substantive provision of the licensing statute had been violated, the statute barred recovery of a commission for services performed by a salesman for one broker while licensed to another broker. The court pointed to the specific language of the statute (38 So. 2d 411, 414):

> " '* * * That any person, firm co-partnership, association or corporation, who has not been licensed in accordance with the provisions of this Act, shall not be allowed to recover for any fee, claim or charge for brokerage in the courts of the State.' "

Similar provisions are contained in sections 3 and 7 of the Illinois act quoted above. Ill. Rev. Stat. 1979, ch. 111, pars. 5703, 5714.

Additional cases to the same effect are:

*Farragut Baggage & Transfer Co. v. Shadron Realty Inc.* (1972), 18 Ariz. App. 197, 501 P.2d 38. There, the salesman who performed the services for which a commission was sought had been licensed to a different broker at the time he commenced negotiations. The subsequent

issuance of his license to the broker who was suing for a commission was held to be ineffective to validate the broker's claim.

*Realty Executives, Inc. v. Northrup, King & Co.* (1975), 24 Ariz. App. 400, 539 P.2d 514, where a broker was denied the recovery of a commission which had resulted from a listing agreement obtained by a salesman while he was unlicensed to the broker, even though the salesman had applied for a change of broker and received it before the ultimate sale was made.

*Willner v. Wilder* (Fla. App. 1973), 280 So. 2d 1, *cert. denied* (Fla. 1973), 287 So. 2d 97, in which a broker was denied recovery of a commission where the services relied on the support the broker's performance were those performed by an unregistered salesman in the employ of the broker. The court said that "To hold otherwise would permit a registered broker to use the services of unregistered salesmen to handle sales and leases of real estate, and to recover commissions or compensation therefor, contrary to the letter and spirit of" the Florida statute. 280 So. 2d. 1, 3.

*Firpo v. Murphy* (1925), 72 Cal. App. 249, 236 P. 968, in which a broker was denied a commission because the salesman's license had not been reissued where there had been a change in employment.

Nor does the fact that Owens' certificate of registration was transferred to plaintiff before the date of the final termination entitle plaintiff to a commission. The subsequent transfer of the certificate has no retroactive effect. Analogous cases are those in which a real estate broker had no license at the time he rendered effective services, but a license was issued prior to the closing of a sale. In *Kirk v. Henry M. Rich & Co.* (1910), 156 Ill. App. 483, 484-85, the court said:

"The ordinance of the city of Chicago makes it unlawful 'for any person to engage in the business, or act in the capacity of a broker within the city, without first obtaining a license therefor;' provides that any person violating the ordinance shall be fined not less than $25, etc.; provides that no license shall be granted for a less or longer period than one year, except, etc., and that, 'every license shall expire on the last day of April following its issue,' etc.

That the ordinance is valid and that a broker who conducts business in violation of its provisions cannot recover commissions, must be regarded as settled by the decisions of the Supreme Court. Braun v. Chicago, 110 Ill. 186; Banta v. Chicago, 172 *id.* 204; Douthart v. Congdon, 197 *id.* 349.

The services of plaintiff were rendered before he obtained a license. It is immaterial that after the services were rendered and before the lease was executed, he took out a license. Plaintiff performed his part of his contract with defendant when he

procured a person willing and able to accept a lease on the terms offered by the defendant, but his acts in the performance of the contract being unlawful, they cannot be the basis of a recovery.

The license took effect from the date it was issued and cannot be given a retroactive effect so as to make valid acts of the plaintiff done between May 1 and October 30, 1907. Eckert v. Collott, 46 Ill. App. 361; Elsberry v. State, 52 Ala. 8; State v. Pate, 67 Mo. 488; Haworth v. Montgomery, 91 Tenn. 16."

See also *Hendricks v. Richardson* (1924), 233 Ill. App. 130; *Farragut.*

If, however, the failure to receive the certificate of registration is due to the delay of the Department, the lack of a certificate of registration at the time the services are performed will not defeat a broker's right to a commission. (*Lucas v. Adomaitis* (1925), 236 Ill. App. 254; *Cooper v. Schoeberlein* (1928), 247 Ill. App. 147.) The record here discloses no such delay.

The language of the Illinois act makes it clear that the intention of the legislature was to prohibit a salesman from working for one broker while his certificate of registration was with another. Under this Act, Owens had the duty to have his certificate of registration transferred to plaintiff, and plaintiff had a duty to maintain a copy of the certificate of registration of each employee and to control their activities. Failure so to do was a violation of the Act. To allow plaintiff to recover would be to allow him to benefit from both Owens' and his unlawful activity. Sections 3 and 7 expressly prohibit recovery for any brokerage service rendered unless the person performing the service was "duly registered" at the time of performance. (Ill. Rev. Stat. 1979, ch. 111, pars. 5703, 5714.) Because the statute expressly bars recovery for an act done by one not "duly registered" and because Owens was not duly registered within the meaning of the statute at the time of the alleged commission agreement, plaintiff cannot recover.

Moreover, it would be illogical to allow plaintiff, who claims an equity based on Owens' conduct, to recover commissions when Owens' conduct was admittedly prohibited by the statute. Owens could not recover any commissions. Plaintiff can claim no greater equity.

Neither *Gillingham v. Cuthbert* (C.P. Phila. 1954), 88 Pa. D. & C. 319, nor *Schantz v. Ellsworth* (1971), 19 Cal. App. 3d 289, 96 Cal. Rptr. 783, are persuasive. In neither was the question of a salesman involved.

In *Gillingham*, the broker, through oversight, failed to complete his annual registration before the deadline. No such question is present here. In *Schantz*, the broker, who was licensed, did not have a license to operate his brokerage business at a second location where the broker's dealings with defendants were conducted. No such situation is here present. In addition, in *Gillingham* the broker was licensed, but not

registered at the time involved. The statute there distinguished between license and registration. The Illinois Act does not. It requires the registration of the salesman to be displayed in the broker's office (Ill. Rev. Stat. 1979, ch. 111, par. 5730(a)) and specifically provides: "A salesman shall not negotiate for his employer until he has received from the Department his pocket identification card either on original application or transfer of employment or a letter from the Department authorizing him to proceed." Ill. Rev. Stat. 1979, ch. 111, par. 5730(c).

In *Schantz*, the court bottomed its decision on the fact that the purpose of the licensing requirement under the statute was to protect the public from incompetent or untrustworthy real estate practitioners which was satisfied by proof of plaintiff's real estate broker's license; it was in connection with his application that his competency and trustworthiness were examined. Under the statutory scheme, licenses for branch offices were routinely granted to one who had a valid broker's license without further proof of competency or trustworthiness. In Illinois, the statute (Ill. Rev. Stat. 1979, ch. 111, par. 5727) provides for the annual issuance of a certificate of registration in the absence of any reason or condition which might warrant refusal. By its very wording, this section requires the Board to consider whether the salesman's certificate warranted renewal.

To allow plaintiff to recover here would undermine the regulatory structure of the Act, which contemplates prior registration of a salesman under a particular broker and control of the salesman by the broker under whom he is registered. The timely transfer of Owens' certificate of registration to plaintiff was not a mere ministerial act as plaintiff claims.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.