DAVID MOY, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REGISTRA-
TION AND EDUCATION *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 78-1928

Opinion filed June 4, 1980.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellants.

O'Brien & Coleman, of Chicago (Richard E. Zulkey, of Zulkey, Pikarski & Gottlick, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

In an administrative review proceeding commenced by plaintiff, David Moy, the circuit court reversed the revocation of plaintiff's real estate salesman's license by the defendant, the Illinois Department of Registration and Education (the Department). The issue presented in this appeal by the Department is whether plaintiff's connection with two real estate transactions violated the statutory provisions which the Department applied in this proceeding.

The two transactions occurred at a time Moy was between real estate jobs. He had been employed part time by Ideal Realty while teaching school. In December 1975 Moy notified Ideal Realty that he was terminating his employment, and the principal owner of Ideal immediately informed its other personnel that Moy was no longer

associated with that company. Moy then made arrangements to go to work for another broker, Kaplan Realty. However, because Kaplan Realty failed to process Moy's exchange of employment application promptly with the Department, it was not dated until February 20, 1976.

While his exchange of employment application was being prepared by Kaplan Realty, Moy told that company that he was working on the two transactions; one of the transactions involved his sister and her husband, and the other, one of his teaching colleagues. The owner of Kaplan Realty told Moy he was not interested in either deal.

Walter H. Djokic, a lawyer and licensed real estate broker, testified at the administrative hearing that he was approached by another lawyer who was representing Moy's sister and brother-in-law as purchasers of real estate. Djokic testified that the lawyer advised him that Moy had asked the lawyer to close the transaction, and that it required a broker.

Djokic then met with Moy who told Djokic that his brother-in-law was purchasing the property in question and that he had left his employment with Ideal Realty; he requested Djokic to act as the broker in the deal. Djokic agreed provided Moy indemnified him against any claims that might be made by any other broker for a commission. When Djokic received the brokerage commission of $5,280, he retained $230 and paid the balance to Moy.

Within a few days the other lawyer and Moy spoke to Djokic about the transaction in which a fellow teacher of Moy's was the purchaser. This transaction was handled in the same manner, with Djokic identified as the broker. In this deal, Djokic retained $190 and paid the balance of the $4,100 commission to Moy.

Moy acknowledged that he never asked Djokic to be his sponsoring broker even though Djokic was identified as the broker in both contracts.

The complaint filed by the Department seeking the revocation of Moy's salesman's license charged that Moy listed Djokic as the broker on two real estate sales contracts when in fact Moy was never sponsored by Djokic. The only substantive finding the real estate examining committee of the Department made after a hearing was:

"THAT on January 26, 1976, and February 11, 1976 David Moy was involved as a salesman in two real estate transactions wherein Walter Djokic was listed as the broker of record when in truth and in fact at no time was David Moy sponsored by Walter Djokic."

The Department's director adopted the findings of the examining committee. In revoking the license the Department concluded that Moy had violated subsections 6 and 11 of section 15(e) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 115(e)), which provide:

"§15. The Department may refuse to issue or renew, may

suspend or may revoke any certificate of registration for any one or any combination of the following causes:

❋ ❋ ❋

(e) Where the registrant in performing or attempting to perform or pretending to perform any act as a real estate broker or salesman, or where such registrant, in handling his own property, whether held by deed, option, or otherwise, is found guilty of:

❋ ❋ ❋

6. Representing or attempting to represent a real estate broker other than the employer;

❋ ❋ ❋

11. Having demonstrated unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interest of the public;

❋ ❋ ❋ "

Possibly Moy did not conform to other requirements of the Act, but he was charged only with violating subsections 6 and 11 of section 15(e). In considering this appeal, therefore, our evaluation of Moy's conduct is limited to whether it fits within the proscriptions of those subsections. As we construe them, they do not cover what the examining committee found Moy did; thus, they do not authorize revoking Moy's license.

■■ The Department's interpretation of subsection 6 is that it justifies revocation or suspension of the license of a salesman who is involved in a real estate transaction when he is not properly registered through an employing broker. We do not agree. The offenses set forth in subsections 1 through 5, 7 through 10, and 12 through 15 of section 15(e) all relate to misrepresentations, fraud or dishonesty on the part of a registered broker or salesman which may cause loss or prejudice to one of the parties to a transaction or to a salesman's employer. The placement of subsection 6 in this series of subsections detailing conduct of this character indicates to us that it was aimed at duplicitous or disloyal conduct by a salesman toward his employer or to misrepresentations by a salesman to those with whom he was dealing as to the identity of his employer. Subsection 6 was intended, in our judgment, to prohibit conduct of the kind referred to in the subsections which precede and follow it, that is sharp, dishonest, or fraudulent practices which in the case of subsection 6 might cause prejudice to a salesman's employer or mislead sellers or purchasers. (*Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, 228, 239 N.E.2d 831.) The purpose of subsection 6, as we view it, is to prevent a salesman from diverting a customer or potential customer from his employer to another broker; it is designed to protect a broker against having a listing or a customer stolen by his employee with the result that the employer is deprived of a commission. It is also intended to prevent a salesman from

misleading people with whom he deals by causing them to believe they are doing business with a broker in whom they have confidence when in fact the salesman is employed by someone else. This interpretation of subsection 6 is supported by subsection 15 which implies that "dishonest dealing" is the type of conduct specified in section 15 of the Act.

The evidence at the administrative hearing failed to establish that Moy was guilty of any impropriety with respect to Ideal Realty. The only person to testify who was connected with Ideal Realty was its sales manager, a person employed by Ideal Realty during the entire period Moy was there. She knew nothing about either transaction involved in the hearing or whether Ideal Realty ever had either property as a listing. Nor was Kaplan Realty cheated; its owner testified that Moy told him about both transactions, but Kaplan Realty had no interest in them. None of the principals in either transaction testified, and there is no evidence or reason to believe that they were deceived, misled, or harmed in any way.

When the transactions in question took place, in late January and mid-February 1976 according to the Department's findings, Moy actually had no employer. He had already told Ideal Realty he was quitting and three former employees of Ideal Realty testified the company's owner announced at a sales meeting around Christmas 1975, that Moy was no longer with the company. At the time the transactions took place, Moy was in the process of establishing a relationship with his next employer, Kaplan Realty.

■■ We find nothing in the Department's finding to support a violation of subsection 11, either. Nothing Moy did in these two transactions serves as a basis for concluding that he was incompetent. Nor do we view anything in his conduct as a demonstration of his unworthiness. The parties to the transactions to which the Department's finding referred were neither harmed by Moy nor suffered any loss. Nothing in the record indicates they were served by Moy or Djokic in any manner which was unsatisfactory to sellers or buyers or which prejudiced them. So far as the record before us reveals, they were not deceived or defrauded. They did not receive any less than they bargained for. The sellers disposed of their properties, paying the commission they intended and expected to pay. Under these circumstances, we do not believe that Moy's conduct was so grievous, offensive to real estate brokers, and dangerous to the public interest that it can justifiably be regarded as demonstrating "unworthiness" on his part. Particularly, we do not believe that the examining committee's sparse finding, that although Moy was not sponsored by Djokic he was involved as a salesman in two transactions in which Djokic was listed as the broker, establishes Moy's "unworthiness." This is especially so in view of our conclusion that Moy's conduct did not come within the scope of subsection 6.

The Department contends that Moy's unworthiness is shown by his

disregard for the Act's dual licensing scheme under which salesmen are licensed separately from brokers and are required to function under the supervision of a broker. In effect, the Department's position is that skirting of this two-tier licensing scheme by a salesman is per se unworthiness under subsection 11. We. are not persuaded.

The Department's position does not respect the ordinary meaning of the word "unworthiness"; the Department's interpretation drains the word of all of its natural vigor. The statutory juxtaposition "unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interest of the public" indicates that "unworthiness" denotes shortcomings of comparable seriousness to "incompetency to act * * * in such manner as to safeguard the interest of the public." Subsection 11 aims at clear lack of qualification. We do not believe that by the use of a strong word such as "unworthiness" the legislature intended to include every deviation from the prescriptions of the Act, no matter how trivial or technical.

The Department, citing *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 550, 370 N.E.2d 1198, calls to our attention and relies on the rule that the interpretation of a statute by an administrative body charged with applying the statute should be given great weight by courts and that such an administrative interpretation is to be regarded as a substantial factor in the interpretation applied by a reviewing court. This rule is usually applied in instances where a statute is ambiguous and where the interpretation by the administrative body is long continued and consistent so that the legislature may be regarded as having concurred in it. (*Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, 101, 370 N.E.2d 528; *People ex rel. Watson v. House of Vision* (1974), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15.) Nothing in the record or in the briefs establishes how long or consistently the Department has applied the interpretation it seeks to give subsections 6 and 11. The Department has not advised us of any rules interpreting these statutes, such as the rules and announcements of the Department of Revenue, which the court in *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161, and *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 277-78, 312 N.E.2d 271, found persuasive as an informed source for ascertaining legislative intent. So far as we know, the Department's interpretation was stated for the first time when its examining committee was confronted with the need to reach a decision in this case. That interpretation is inconsistent with the scheme of the Act and the apparent meaning of the statutory language. It has no reasonable basis in law (*Ranquist*, at 555), and we will not follow it.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.