NO. 4-09-0495          Filed 11/30/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CAROL E. GRUWELL,                        )   Appeal from
          Plaintiff-Appellant,           )   Circuit Court of
          v.                             )   Sangamon County
THE ILLINOIS DEPARTMENT OF FINANCIAL     )   No. 05MR545
AND PROFESSIONAL REGULATION;             )
DIVISION OF BANKS AND REAL ESTATE OF     )
THE ILLINOIS DEPARTMENT OF FINANCIAL     )
AND PROFESSIONAL REGULATION; THE         )
REAL ESTATE ADMINISTRATION AND           )
DISCIPLINARY BOARD OF THE ILLINOIS       )
DEPARTMENT OF FINANCIAL AND              )
PROFESSIONAL REGULATION; THE BUREAU      )
OF REAL ESTATE PROFESSIONS OF THE        )
DIVISION OF PROFESSIONAL REGULATION      )
OF THE ILLINOIS DEPARTMENT OF            )
FINANCIAL AND PROFESSIONAL               )
REGULATION; DANIEL E. BLUTHARDT, as      )
Director of the Division of              )
Professional Regulation of the          )
Illinois Department of Financial and     )
Professional Regulation; D. LORENZO      )
PADRON, Director of the Division of      )
Professional Regulation of the          )
Illinois Department of Financial and     )
Professional Regulation; BRENT E.        )
ADAMS, Acting Secretary of the           )
Illinois Department of Financial and     )
Professional Regulation; and MICHAEL     )
McRAITH, Director of the Division of     )
Insurance of the Illinois Department     )
of Financial and Professional            )   Honorable
Regulation,                              )   Leo J. Zappa, Jr.,
          Defendants-Appellees.          )   Judge Presiding.
_____

          JUSTICE KNECHT delivered the opinion of the court:

          In March 2005, an administrative hearing officer found

plaintiff, Carol E. Gruwell, engaged in the unlicensed practice

of real estate in violation of section 20-10 of the Real Estate License Act of 2000 (Act) (225 ILCS 454/20-10 (West 2002)). In April 2005, defendant Real Estate Administration and Disciplinary Board (Board) of the Illinois Department of Financial and Professional Regulation (Department) found the same and recommended a fine of $25,000. In October 2005, defendant Daniel E. Bluthardt, Director of the Division of Professional Regulation of the Department (Director), denied plaintiff's motion for rehearing, adopted the Board's findings and conclusions, and imposed a $25,000 civil fine. Plaintiff sought administrative review. In June 2009, the circuit court affirmed the Director's order. Plaintiff appeals the administrative order, arguing, among other things, (1) the Director erred in finding plaintiff engaged in the unlicensed practice of real estate; (2) the $25,000 fine is excessive; and (3) the Act, as applied to plaintiff, violates the first amendment to the United States Constitution. We affirm as modified to reflect our reduction in the amount of plaintiff's fine to $7,500.

## I. BACKGROUND

From September or October 2002 to October 2003, plaintiff worked as an independent contractor for Central Illinois For Sale By Owner (Central). Central's primary business was the operation of a Web site hosting classified advertisements for a flat fee. It provided a forum for homeowners to advertise their

homes for sale. By prohibiting homeowners represented by real estate agents from advertising on its site, Central ensured the homes it advertised were for sale by owner. Central's Web site provided these home sellers with uniform advice on pricing, staging, and negotiating the sale of their homes and referred them to professionals who provided related services. Plaintiff received a commission for each advertisement she sold.

In October 2003 Central agreed to enter, and in January 2004 Central did enter, a consent order with the Department. In the order, Central admitted its activities, in the aggregate, amounted to unlicensed practice of real estate in violation of section 20-10 of the Act (225 ILCS 454/20-10 (West 2002)). Central agreed to undergo and complete the requirements to become a licensed corporate broker and to pay a $7,500 fine.

In October 2003, plaintiff discontinued working for Central. In December 2003, the Department served plaintiff with a complaint and notice of a preliminary hearing. The complaint alleged plaintiff practiced real estate without a license during her tenure with Central in violation of section 20-10 of the Act (225 ILCS 454/20-10 (West 2002)). Specifically, it alleged plaintiff unlawfully practiced real estate by (1) representing herself as a real estate agent in newspaper advertisements and radio appearances; (2) contracting with homeowners to assist them in marketing and selling their homes; (3) advising homeowners on

- 3 -

selling their homes, setting the price, and negotiating with buyers; (4) assisting homeowners in marketing their homes by taking photographs of their homes and posting them to Central's Internet site; (5) assisting homeowners in holding open houses; and (6) referring homeowners to professional service providers including attorneys, home lenders, and home inspectors.

In August 2004, the parties presented arguments in an administrative hearing before a hearing officer and two members of the Board. The parties stipulated to admission of several evidentiary exhibits offered by the Department, which included tapes and transcripts of eight of plaintiff's regular radio appearances, newspaper advertisements plaintiff ran, pages from Central's Web site, and Central's consent order.

In her radio appearances, plaintiff and a radio host spoke about plaintiff's services with Central, including its real estate advertising services. Plaintiff said homeowners could advertise their homes for sale on Central's Web site for a flat fee. The fee included assistance from a representative of Central in operating the advertising software and free home photography for use in the advertisement. In one appearance, plaintiff stated, "I am an Internet site and I help people sell their homes on the Internet."

In some, but not all, of the appearances, plaintiff included disclaimers specifying she was not a real estate agent

and she did not negotiate sales.  In one such disclaimer, she said, "[Central is] not a real estate company[,] so there's [sic] no hidden costs or commissions."  She said homeowners themselves were responsible for writing their advertisements and opening their houses to the public.  In one appearance, plaintiff likened Central to "an extra, extra fancy newspaper where [plaintiff was] the newspaper and [homeowners were] their own editors."  She corrected the radio host once when he characterized Central as a "real estate service" by stating, "[Central is] an ad agency[,] not a real estate company."

During these appearances, plaintiff spoke about homes for sale on Central's Web site, sometimes describing them in the first person.  She sometimes prefaced these descriptions by asking the radio host if she could "just sneak one in."  She gave the houses' locations and asking prices, details about their lay-outs and amenities, and information about their neighborhoods. She told the radio host to visit one home before it sold.  She invited a dentist's clients to visit his open house.  In one appearance, she said Central "sold a half a million last week."

In the newspaper advertisements, plaintiff aggregated advertisements for several homes on one page with Central and plaintiff's names and plaintiff's phone number.  The advertise-ments did not provide contact information for the homeowners whose houses were advertised.  Some, but not all, of these

advertisements included disclaimers specifying plaintiff and Central were not acting as a real estate agent or company.  All the advertisements taken into evidence included copy advertising plaintiff or Central's services specifically.  One stated, "9 Million in Homes Sold since Jan. '03," and another, "12 Million Dollars Worth of Homes Listed, approx 4 Million Sold As of Jan. 2003."  One stated, "If you want to see your house SOLD," call plaintiff.

Among the pages from Central's Web site were a disclaimer page, a page giving contact information for Central and its representatives, pages describing Central's services, pages giving advice to home sellers, and pages of advertisements.  The disclaimer stated Central's Web site was "strictly an advertisement venue" that was not "a real estate organization" and did not offer "professional real estate[-]related assistance."  The contact page listed plaintiff as the "local contact" for Springfield, Illinois, and the surrounding area.  One page stated Central "will not advertise any particular item listed on this Web site."

The parties also stipulated to several of plaintiff's exhibits, which included copies of several Web sites that plaintiff alleged were similar to Central's and offered similar services; a letter from the Illinois Attorney General's office to plaintiff stating it received no complaints about Central from

January 2000 until March 2004; and a written and signed disclaimer from plaintiff, addressed to a client, stating she was not providing brokerage services.

Plaintiff testified, although she had been a licensed real estate salesperson from 1986 to 1991, when she allowed her real estate license to lapse, she did not act as a real estate broker for Central but merely as an advertiser. She asserted she never received a brokerage commission, and her compensation never depended on the home's sale. She asserted other Internet companies provided the same services and she was singled out for prosecution because some licensed real estate professionals disliked her. In closing arguments, the Department argued plaintiff knowingly practiced real estate without a license and requested the Director order plaintiff to pay a $7,500 fine. Plaintiff argued she merely provided advertising services and asserted, "This is the future [of the industry], like it or not."

In March 2005, the hearing officer found the Department had sufficiently shown plaintiff engaged in the unlicensed practice of real estate. In April 2005, the Board concluded plaintiff knowingly and repeatedly violated section 20-10 of the Act (225 ILCS 454/20-10 (West 2002)) and recommended a $25,000 civil penalty. Plaintiff moved for a rehearing, arguing the Board erred in finding she practiced real estate without a license and in requesting an excessive fine. In October 2005,

the Director denied plaintiff's motion for rehearing and adopted the Board's findings of fact and conclusions of law and imposed a $25,000 fine.

In November 2005, plaintiff sought administrative review in the circuit court. In March 2009, plaintiff moved for judgment, arguing (1) she did not act as a "broker" as defined in the Act (225 ILCS 454/1-10 (West 2002)) or, alternatively, she qualified for exemptions under sections 5-20(7) and (9) (225 ILCS 454/5-20(7), (9) (West 2002)); and (2) the fine was excessive. In June 2009, the court affirmed the Director's conclusions and the fine. This appeal followed.

## II. ANALYSIS

On appeal, plaintiff argues (1) she did not act as a "broker" under the Act; (2) the fine was excessive; and (3) as applied to her case, the Act violates the first amendment to the United States Constitution (U.S. Const., amend. I). We disagree with plaintiff's arguments regarding her violation of the Act, and we find she forfeited her constitutional argument. We agree with plaintiff the fine imposed was excessive and affirm as modified.

### A. Standard of Review

On appeal, we review the Board's decision, not the circuit court's. See Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 212, 886 N.E.2d 1011,

- 8 -

1019 (2008). The scope of judicial review of administrative decisions "extend[s] to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2008). A court may encounter three types of questions on administrative review of an agency decision: questions of fact, questions of law, and mixed questions of law and fact. Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018. Because an administrative agency's findings of fact are presumed true, "a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence." Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018; see also 735 ILCS 5/3-110 (West 2008) ("The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct"). "In contrast, an agency's decision on a question of law is not binding on a reviewing court," and we review such a decision de novo. Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018.

Mixed questions of law and fact "are 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is *** whether the rule of law as applied to the established facts is or is not violated.'" American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel, 216 Ill. 2d 569, 577, 839 N.E.2d 479, 485 (2005), quoting

<u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). Decisions of mixed questions of law and fact are reversible only if they are clearly erroneous. <u>Cinkus</u>, 228 Ill. 2d at 211, 886 N.E.2d at 1018. The clearly erroneous standard is "'significantly deferential.'" <u>Provena Covenant Medical Center v. Department of Revenue</u>, 236 Ill. 2d 368, 387, 925 N.E.2d 1131, 1143 (2010); see also <u>Provena Covenant Medical Center</u>, 236 Ill. 2d at 387 n.9, 925 N.E.2d at 1143 n.9 (courts accord deference to administrative decisions "in recognition of the fact that agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent"). "A decision is 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been committed." <u>American Federation of State, County & Municipal Employees</u>, 216 Ill. 2d at 577-78, 839 N.E.2d at 485, citing <u>AFM Messenger Service, Inc. v. Department of Employment Security</u>, 198 Ill. 2d 380, 395, 763 N.E.2d 272 at 282 (2001).

B. Unlicensed Practice of Real Estate

Plaintiff contends the Director erred by finding she violated section 20-10 of the Act (225 ILCS 454/20-10 (West 2002)). Section 20-10 provides a civil penalty against "[a]ny person who practices, offers to practice, attempts to practice,

- 10 -

or holds oneself out to practice as a real estate broker[ or] real estate salesperson *** without being licensed under this Act."  225 ILCS 454/20-10 (West 2002).  In turn, section 10-1 defines a "salesperson," in pertinent part, as "any individual, *** who is employed by a real estate broker or is associated by written agreement with a real estate broker as an independent contractor and participates in any activity described in the definition of 'broker.'"  225 ILCS 454/1-10 (West 2002).  Because plaintiff undisputedly worked as an independent contractor for Central, which admitted in its consent order to practicing as a real estate broker, the only question remaining under section 20-10 is whether plaintiff acted as, or held herself out to be, a broker.

Section 1-10 of the Act defines "broker," in pertinent part, as:

"an individual *** who for another and for compensation, or with the intention or expectation of receiving compensation, either directly or indirectly:

(1) Sells, exchanges, purchases, rents, or leases real estate.

(2) Offers to sell, exchange, purchase, rent, or lease real estate.

(3) Negotiates[ or] offers, at-

tempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of real estate.

(4) Lists[ or] offers, attempts, or agrees to list real estate for sale, lease, or exchange.

* * *

(7) Advertises or represents himself or herself as being engaged in the business of buying, selling, exchanging, renting, or leasing real estate.

(8) Assists or directs in procuring or referring of prospects, intended to result in the sale, exchange, lease, or rental of real estate.

(9) Assists or directs in the negotiation of any transaction intended to result in the sale, exchange, lease, or rental of real estate.

(10) Opens real estate to the public for marketing purposes."  225 ILCS 454/1-10 (West 2002).

Providing a convenient shorthand, the Act defines "licensed activities" as "those activities listed in the definition of

'broker.'"  225 ILCS 454/1-10 (West 2002).

As an initial matter, plaintiff asserts this argument presents a question of fact, as to which our review is under the most deferential, manifest-weight-of-the-evidence standard.  We disagree.  Plaintiff does not dispute the Director's findings regarding what her conduct was.  Instead, she argues the Director erred in finding her conduct conformed to the Act's prohibitions.  This presents a mixed question of law and fact, which we review for clear error.

In addressing plaintiff's argument, we must interpret specific language in the Act.  Courts addressing the Act's predecessor held, "[T]he Act is not a penal measure, to be strictly construed against the State, but a broad statutory system which is remedial and therefore should be liberally construed."  White v. Chicago Title & Trust Co., 99 Ill. App. 3d 323, 325, 425 N.E.2d 1017, 1018 (1981) (interpreting the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, pars. 5701 through 5743)).  These courts relied on the General Assembly's statement of intent contained in the earlier act: "The intent of the legislature in enacting this statute is to evaluate the competency of persons engaged in the real estate business for the protection of the public."  Ill. Rev. Stat. 1979, ch. 111, par. 5701.  From this language, they concluded the purpose of the act was to prevent "injury to the public by

assuring that the occupation will be practiced with honesty and integrity, excluding from the profession those who are incompetent or unworthy." Ranquist v. Stackler, 55 Ill. App. 3d 545, 551, 370 N.E.2d 1198, 1203 (1977). The terms of the predecessor act prohibiting unlicensed practice of real estate were thus construed broadly to deter the circumvention of licensing requirements. See, e.g., Rabin v. Prenzler, 116 Ill. App. 3d 523, 531, 451 N.E.2d 1331, 1337 (1983).

The legislative statement of intent remains substantially the same in the Act as in its predecessor. Compare Ill. Rev. Stat. 1979, ch. 111, par. 5701 (quoted above), with 225 ILCS 454/1-5 (West 2002) ("The intent of the General Assembly in enacting this statute is to evaluate the competency of persons engaged in the real estate business and to regulate this business for the protection of the public"). Therefore, we find the principles regarding construction of the Real Estate Brokers and Salesmen License Act apply to the current Act as well.

Plaintiff's argument consists of three fundamental contentions: (1) plaintiff did not perform any "licensed activities" under the Act; (2) plaintiff did not act "for another" under the Act; and (3) plaintiff did not act "for compensation" under the Act. While defendants argue plaintiff forfeited the latter two arguments by failing to raise them at her administrative hearing, plaintiff contended throughout the proceedings in

- 14 -

this matter she did not act as a real estate agent. While our review in administrative-review cases is limited, we decline defendants' invitation to find plaintiff forfeited these arguments by failing to utter the specific words used in the statute. We consider each argument in turn.

## 1. "Licensed Activities"

Plaintiff argues the Director erred in finding she performed, or held herself out as performing, licensed activities. The gist of plaintiff's argument appears to be she did nothing more than provide a forum for homeowners to advertise their real estate for sale. In arguing plaintiff did not represent herself to be a broker, plaintiff relies extensively on disclaimers she made in several of her many newspaper and radio advertisements to the effect she was not, and did not work for, a real estate broker. Defendants argue the evidence at the hearing provided a sufficient basis for the Director's findings and conclusions. We agree with defendants.

The Board--and the Director, by adoption--found plaintiff violated section 20-10 by (1) holding herself out as a broker in newspaper advertisements; (2) listing homes for sale in newspaper advertisements; (3) selling homes in advertisements; (4) holding herself out as a broker in radio advertisements; (5) acting, in effect, as a spokesperson for the homeowners in radio advertisements; (6) referring homeowners to Central's Web site

which, in turn, gave homeowners tips on selling and marketing their homes, interacting with buyers, setting and negotiating price, and finding related service providers such as real estate appraisers and attorneys; (7) assisting in marketing real estate by taking photographs of properties and uploading them to Central's Web site; (8) assisting in marketing real estate by providing clients with for-sale-by-owner signs and updating the signs with respect to the status of the home sale; and (9) referring prospective buyers and thereby assisting in negotiations of sales. Plaintiff fails to point to evidence or law in contradiction of these conclusions.

Plaintiff asserts, with respect to the newspaper and radio advertisements, she never stated she was a real estate agent and, moreover, often stated she was not a real estate agent. Similarly, she asserts she never used the words "closing" or "commission." The Board specifically concluded, "The statements in the ads that [plaintiff] was not a real estate agent did not change the active role [plaintiff] played, both in the ads and in servicing the clients outside the ads" (emphasis in original). The Board found plaintiff's disclaimers essentially disingenuous and misleading in light of her other representations and actions. For example, plaintiff's statement she was not a real estate agent is irreconcilable with her on-air statements "we go ahead and put the house up on the market" and "we sold a

half a million [dollars' worth of real estate] last week." Testimony of the radio host with whom plaintiff advertised showed plaintiff's advertisements resembled those of licensed brokers. Plaintiff described specific properties, sometimes in the first person, giving rise to the conclusion she was acting as a real estate agent on behalf of the homeowners. This conclusion was further engendered by plaintiff's failure in the same radio advertisements to provide contact information for the homeowners. Although plaintiff contends a reasonable listener would know to visit Central's Web site for homeowners' contact information, we decline to find the Board clearly erred in finding plaintiff was holding herself out as an intermediary between the seller and prospective buyers.

Moreover, many of plaintiff's disclaimers served the mere purpose of emphasizing the relative inexpensiveness of Central's services compared to a licensed broker's, while simultaneously suggesting the services were equivalent. For example, in one of her radio appearances, plaintiff stated, "[Central is] not a real estate company[,] so there's [sic] no hidden costs or commissions." The Board decided plaintiff's representations and actions carried more force than her characterization of her activities, within an advertising context, as outside the scope of practicing real estate. We do not find this determination clearly erroneous.

Plaintiff further asserts plaintiff's "passive knowledge" of the contents of Central's Web site is insufficient to find plaintiff violated the Act. The Act, however, imposes a penalty for directly or indirectly providing licensed activities. Thus, even though plaintiff was not responsible for the information on Central's Web site, her referral of clients to the Web site for advice on marketing and selling their homes constituted licensed activity--specifically, assisting or directing in the negotiation of any transaction intended to result in the sale of real estate. Central itself admitted its Web content constituted unlicensed practice of real estate. Plaintiff's active advice to homeowners, not her passive knowledge of language on Central's Web site, supports the Board's finding. We do not find the Board's application of the Act in this respect clearly erroneous.

Plaintiff summarily says she "did not list anything." She asserts the homeowners themselves put their houses on the market. However, this contradicts plaintiff's on-air comment to the effect she and Central "go ahead and put the house on the market." At a minimum, plaintiff held herself out as listing homes for sale.

Because our evaluation of the law and facts under the clearly erroneous standard on these issues sufficiently supports the Board's findings and conclusions, we decline to address each of plaintiff's remaining contentions on this argument.

## 2. "For Another"

Plaintiff argues next her conduct was not "for another" and, therefore, was not a licensed activity for which she could be fined under section 20-10 of the Act (225 ILCS 454/20-10 (West 2002)).  Plaintiff's argument relies on a federal district court's unpublished opinion in which the court interpreted the language "for another" in the context of New Hampshire's statutes regulating real estate practice.  See Skynet Corp. v. Slattery, No. 06-cv-218-JM, 2008 WL 924531 (D.N.H. March 31, 2008) (unpublished opinion).  That court concluded "for another" within New Hampshire's statutory scheme "connotes more of an agency relationship than merely a conduit service."  Skynet, 2008 WL 924531, at *8.  Admittedly, the New Hampshire act strikingly resembles the Illinois Act.  However, because we find "for another" in the Act to be unambiguous, we decline to look to another jurisdiction--let alone another jurisdiction's unpublished opinion--for aid in interpreting it.

The purpose of the Act, by analogy to its predecessor, is to protect the public by imposing on real estate brokers and salespeople minimum competency and character requirements.  See Rabin, 116 Ill. App. 3d at 531, 451 N.E.2d at 1337.  Like its predecessor, the Act includes protective measures intended to prohibit "sharp, dishonest, or fraudulent practices," which may prejudice parties to a real estate transaction.  Moy v. Depart-

- 19 -

ment of Registration & Education, 85 Ill. App. 3d 27, 29, 406 N.E.2d 191, 194 (1980). Insofar as it limits application of the term "broker" under the Act and, thereby, frustrates prosecution of unlicensed practice that would promote the Act's protective purpose, we interpret the clause "for another" narrowly.

Keeping this in mind, we conclude "for another" as used in the definition of "broker" is the Act's mechanism whereby it exempts parties to real estate transactions from licensing requirements when acting in their own behalf. Thus, for example, a homeowner may sell or lease his own home, or open it to the public for marketing purposes, or negotiate for the purpose of selling it, where he would otherwise violate section 20-10. Under this narrow interpretation, it is unnecessary to ascribe a nebulous agency requirement where we find none in the language of the Act. Because plaintiff acted for another, merely as opposed to acting for herself, she was not exempt from the Act's licensing requirements by virtue of this clause in the definition of "broker."

### 3. "For Compensation"

Similarly, plaintiff argues her actions were not "for compensation, or with the intention or expectation of receiving compensation." 225 ILCS 454/1-10 (West 2002). Plaintiff again relies on Skynet to argue this language in the Act requires a nexus between an agency relationship and the compensation re-

ceived in exchange for performing brokerage services.  We reject plaintiff's argument.

Again, we construe the statute broadly.  The Act defines "compensation" as "the valuable consideration given by one person or entity to another person or entity in exchange for the performance of some activity or service."  225 ILCS 454/1-10 (West 2002).  The Act does not explicitly require "compensation" to be given within the context of an agency relationship.  It is sufficient the Board found plaintiff received a commission for each advertisement she sold, in connection with which she performed licensed activities.

Indeed, the Board characterized plaintiff's compensation as "discounted brokerage," and this conclusion is not clearly erroneous.  Essentially, the Board acknowledges plaintiff did not perform every possible activity of a real estate broker; rather, she and Central accepted less than full brokerage compensation and, in exchange, performed less than full brokerage.  The Act does not exempt "minor" violations, wherein an unlicensed broker does not see a sale to its conclusion.  Similarly, the Act does not make exception for compensation amounting to less than full-blown brokerage commission and fees.

### C. Fine

Plaintiff argues her $25,000 fine is excessive and urges us to vacate it.  Although defendants argue plaintiff

forfeited this issue, we find plaintiff preserved the argument by raising it in her motion for rehearing before the Director and renewing it in her brief and oral argument before the circuit court. In the alternative, defendants argue the amount of the fine does not constitute error. We agree with plaintiff her fine is excessive and reduce it to $7,500.

When considering an administrative sanction, a reviewing court "defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest." Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 99, 606 N.E.2d 1111, 1122 (1992). Our deference in this respect "does not mean, however, *** that all administrative decisions are sacred and not within reach of the courts." Dorfman v. Gerber, 29 Ill. 2d 191, 196, 193 N.E.2d 770, 773 (1963). We will reverse a sanction if it is arbitrary or capricious or amounts to an abuse of discretion. See Deen v. Lustig, 337 Ill. App. 3d 294, 302, 785 N.E.2d 521, 529 (2003); Siddiqui v. Department of Professional Regulation, 307 Ill. App. 3d 753, 763, 718 N.E.2d 217, 228 (1999).

> "'Agency action is arbitrary and capricious
> only if the agency contravenes the legisla-
> ture's intent, fails to consider a crucial
> aspect of the problem, or offers an explana-
> tion which is so implausible that it runs

- 22 -

contrary to agency expertise.' [Citation.]
An abuse of discretion is found when a decision is reached without employing conscientious judgment or when the decision is clearly against logic." Deen, 337 Ill. App. 3d at 302, 785 N.E.2d at 529.

In the specific context of administrative fines, an administrative agency abuses its discretion when it "imposes a sanction that is (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute." Siddiqui, 307 Ill. App. 3d at 763, 718 N.E.2d at 228. An agency may consider sanctions imposed in similar cases to develop uniformity in disciplinary proceedings. Siddiqui, 307 Ill. App. 3d at 764, 718 N.E.2d at 228.

Although section 20-10 of the Act allows the Director to impose a civil fine of up to $25,000 for each violation (225 ILCS 454/20-10 (West 2002)), and although plaintiff violated the Act numerous times, we nevertheless find the Director's imposition of a $25,000 fine in this case constitutes error. We note, significantly, the Department imposed a $7,500 fine upon Central pursuant to its consent order. While plaintiff's violations were numerous and reprehensible, we find no justification in logic or conscientious judgment to impose a fine 233% greater against her than against Central, which also committed multiple violations of

- 23 -

the Act.

Plaintiff contends her fine contravenes the Act's purposes of evaluating the competency of persons involved in the real estate business and protecting the public against fraudulent practices. See 225 ILCS 454/1-5 (West 2000). While we disagree with plaintiff's contention insofar as she neglects her violations obstructed the evaluation of her competency to practice real estate and constituted a fraud against the public, we find the amount of the fine is not commensurate with the legislative purposes of the Act. Rather, it is overly harsh in light of plaintiff's violations and the Department's treatment of Central under similar circumstances. We find reduction of the amount of plaintiff's fine from $25,000 to $7,500 is necessary to meet the ends of justice.

We find it unnecessary to remand for the Director to adjust the amount of the fine. Instead, we find it is within our appellate powers to vacate the $25,000 fine and impose a $7,500 fine. In a case under the Administrative Review Law (735 ILCS 5/3-101 through 3-113 (West 2008)), the circuit court may, "in case of affirmance or partial affirmance of an administrative decision which requires the payment of money, *** enter judgment for the amount justified by the record." 735 ILCS 5/3-111(a)(8) (West 2008). In turn, the circuit court's decision "is reviewable by appeal as in other civil cases." 735 ILCS 5/3-112 (West

2008). In an appeal from a civil judgment, Supreme Court Rule 366(a)(5) empowers this court to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief[] *** that the case may require." 155 Ill. 2d R. 366(a)(5). Accordingly, we modify the amount of plaintiff's fine to $7,500 in accordance with our powers under Rule 366(a)(5).

## D. First Amendment

Plaintiff argues the Act, as applied to her, violates the first amendment to the United States Constitution. Defendants argue plaintiff forfeited this argument by failing to raise it at the administrative hearing and on administrative review. We agree with defendants.

In general, "if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." Cinkus, 228 Ill. 2d at 212, 886 N.E.2d at 1019. "The rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts." Cinkus, 228 Ill. 2d at 213, 886 N.E.2d at 1019. Even though "an administrative agency lacks the authority to declare a statute unconstitutional, or even to question its validity," a litigant must present its constitutional argument on

the record at the administrative stage.  <u>Cinkus</u>, 228 Ill. 2d at 214, 886 N.E.2d at 1020.  "Such a practice avoids piecemeal litigation and, more importantly, allows opposing parties a full opportunity to refute the constitutional challenge."  <u>Cinkus</u>, 228 Ill. 2d at 214, 886 N.E.2d at 1020.

Here, plaintiff mentioned her first-amendment claim briefly at her administrative hearing and in proceedings before the circuit court.  In her testimony at the hearing, plaintiff stated, "If I want to talk--I would think freedom of speech would be a--denied if you're telling me that I have to be a realtor before I can talk about an ad that's placed on my Internet."  This comment does not rise to the level of an argument, and plaintiff failed to obtain a ruling from the agency on this alleged issue.  In her motion for judgment before the circuit court, plaintiff complained, "Essentially, the Department wants to cap [f]reedom of [s]peech in violation of the United States' [<u>sic</u>] Constitution for the sake of making an example out of [plaintiff]."  To conclude the argument in plaintiff's reply brief in support of her motion for judgment, plaintiff's counsel stated, "Further, [plaintiff] has asked that it be found that *** her [f]irst[-a]mendment rights have been infringed."  However, none of these utterances was sufficient to preserve the argument for review.  Plaintiff failed to cite any legal authority, and the Department, defendants, and the court never had occasion to

reply to plaintiff's assertions because they did not present sufficiently cogent analysis or argument. Therefore, we hold plaintiff procedurally defaulted her first-amendment argument.

> Nevertheless, plaintiff "invokes the principle that procedural default is a limitation on the parties rather than on this court's jurisdiction, and that the doctrine of procedural default may be relaxed when necessary to maintain a uniform body of precedent or where the interests of justice so require." Cinkus, 228 Ill. 2d at 215, 886 N.E.2d at 1021.

Courts have made an exception to the general procedural-default rule for challenges to the facial validity of a statute. See Arvia v. Madigan, 209 Ill. 2d 520, 527-28, 809 N.E.2d 88, 94 (2004). Such a case "presents an entirely legal question that does not require fact-finding by the agency or application of the agency's particular expertise." Arvia, 209 Ill. 2d at 528, 809 N.E.2d at 94. In contrast, a challenge to a statute as applied to a litigant relies upon certain factual bases. Thus, when a litigant presents an as-applied challenge, "an evidentiary record is indispensable because administrative review is confined to the record created before the agency." Arvia, 209 Ill. 2d at 528, 809 N.E.2d at 94. In such a case, the rule of procedural default

"allows opposing parties a full opportunity to present evidence to refute the constitutional challenge." <u>Arvia</u>, 209 Ill. 2d at 528, 809 N.E.2d at 94. In this case, plaintiff deprived defendants of such an opportunity by failing to form her comments into a constitutional claim until this appeal. The exception to the rule of procedural default does not apply in this case. Therefore, we decline to address plaintiff's first-amendment argument.

III. CONCLUSION

For the reasons stated, we affirm the circuit court's decision affirming the Director's order as modified to reflect the reduction in plaintiff's fine from $25,000 to $7,500.

Affirmed as modified.

TURNER, J., concurs.

APPLETON, J., dissents.

JUSTICE APPLETON, dissenting:

While I concur with the majority's decision that the fine imposed upon plaintiff should be reduced, I disagree that plaintiff is subject to any penalty at all by reason of her commercial activities.

The Act (225 ILCS 454/1-1 through 999-99 (West 2002)), under which these proceedings were brought, provides a comprehensive scheme for the licensing and discipline of brokers and sellers of real estate in Illinois. Exemptions from the licensing requirements imposed on professionals engaged in the real estate business are set forth in section 5-20 (225 ILCS 454/5-20 (West 2002)). Two of those exemptions have application here:

"(7) Any multiple listing service or other information exchange that is engaged in the collection and dissemination of information concerning real estate available for sale, purchase, lease, or exchange along which no other licensed activities are provided.

\*\*\*

(9) Any medium of advertising in the routine course of selling or publishing advertising along with which no other licensed activities are provided." 225 ILCS 454/5-

- 29 -

20(7), (9) (West 2008).

I would find that plaintiff's real estate advertising activities complained of here easily fit within these exemptions.

I am not unmindful of the comments plaintiff made on the Sam Madonia radio program to the effect that she had "sold" a certain volume of real estate or that she had a very pretty house "for sale." Such comments may make her a blabbermouth but not a realtor. It is clear, in the context of the entirety of her remarks, that she was engaged in the business of taking pictures of houses for sale by owner (FSBO) and developing a grouping of FSBO properties for newspaper advertising.

The essence of the real estate profession is the activity of bringing buyers and sellers together. Rabin, 116 Ill. App. 3d at 531, 451 N.E.2d at 1337. Plaintiff's activities stand in stark contrast to that definition. Realtors, whether brokers or licensed salespersons, actively solicit sales and/or purchases of real estate, advise their clients as to market value and sales strategies, and assist in the closing of real estate sales. Such activities stand in stark contrast to the business of FSBO, for which plaintiff is an agent. That business plan is to solicit and place advertising for persons who want to sell their own property. FSBO's involvement in the sale is taking a picture of the subject property, grouping the pictures in an advertisement with other properties for sale, and providing a

yard sign with the owner's telephone number on it.

A realtor is a fiduciary to his or her client.  See
<u>Jeffrey Allen Industries, Inc. v. Sheldon F. Good & Co.</u>, 153 Ill.
App. 3d 120, 123, 505 N.E.2d 1104, 1106 (1987); <u>Pawlowic v.
Pearce</u>, 59 Ill. App. 2d 153, 157, 207 N.E.2d 155, 156 (1965).
Plaintiff's activities can in no way be construed as involving a
fiduciary relationship.  The record is devoid of any evidence
that she performed a market analysis, suggested a sale price, or
brought willing buyers and sellers together. Realtors are compen-
sated by a percentage of the sale price.  Plaintiff, by contrast,
was paid a per-property price of $50 to take pictures and place
advertisements.

I would also find that plaintiff's activities are
protected speech by the first amendment to the United States
Constitution.  U.S. Const., amend. I.  In <u>Forsalebyowner.com
Corp. v. Zinnemann</u>, 347 F. Supp. 2d 868 (E.D. Cal. 2004), the
California licensing authorities sought to stop the exact same
activities performed by the plaintiff here.  The United States
district court found that the real estate licensing laws could
not do so as they constituted unconstitutional content and media-
based regulation.  <u>Zinnemann</u>, 347 F. Supp. 2d at 877.

The complaint against Forsalebyowner by the California
licensing authorities was that Forsalebyowner advertised proper-
ties for sale on the Internet.  Yet realtors advertised proper-

- 31 -

ties for sale in newspapers and on the Internet.  The district court held:

> "Because FSBO unquestionably has a speech interest in disseminating real estate information through its Web site, and because [d]efendants have not shown any compelling state interest in requiring a real estate broker's license for FSBO's Web site but not for virtually identical newspaper Web sites, the presumption of unconstitutionality triggered by this disparity of treatment has not been overcome.  Section 10026 [of the California Business and Professions Code] accordingly fails constitutional muster on that basis."  <u>Zinnemann</u>, 347 F. Supp. 2d at 879.

While it is certainly true that commercial speech is more susceptible to regulations than other forms of expression, the State has the burden of justifying a restriction on commercial speech. <u>Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton</u>, 105 Ill. 2d 389, 403, 475 N.E.2d 536, 543 (1985).  The State has not done so here.